Robert P. Schuster
Wyoming Bar No. 4-1137
Bradley L. Booke
Wyoming Bar No. 5-1676
ROBERT P. SCHUSTER, P.C.
P.O. Box 13160
Jackson, Wyoming 83002
Telephone: 1.307.732.7800
bob@bobschuster.com
brad@bobschuster.com

FILED
U.S. DISTRICT COURT
DISTRICT OF WYOMING

2023 NOV 13  AM 11: 22

MARGARET BOTKINS, CLERK
CHEYENNE

## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF WYOMING

| | |
|---|---|
| **MASCEDONIO PEREZ GARCIA, JESUS FRANCISCO CERVANTES GARCIA, YOLANDA GARCIA GARCIA, and JOSEPH ROOFING LLC,** )<br><br>**Plaintiffs,** )<br> )<br>**v.** )<br> )<br>**ERICH STEVEN TUCKER,** )<br> )<br>**Defendant.** ) | Civil No. 23-CV-214-R |

## COMPLAINT AND DEMAND FOR JURY TRIAL

For their claims for relief against the defendant, Mascedonio Perez Garcia, Jesus Francisco Cervantes Garcia, Yolanda Garcia Garcia, and Joseph Roofing LLC---by and through their counsel---state and allege as follows:

### I.   PARTIES

1.    Mascedonio Perez Garcia ("Mr. Perez") is a citizen of Mexico, a resident of Teton County, Wyoming, and has been a resident of Teton County Wyoming since 2013.

2.     Jesus Francisco Cervantes Garcia ("Mr. Cervantes Garcia") is a citizen of Mexico, a resident of Teton County, Wyoming, and has been a resident of Teton County Wyoming since 2000.

3.     Yolanda Garcia Garcia ("Ms. Garcia Garcia") is a resident of the United States and a resident of Teton County, Wyoming. She is Mr. Perez's partner.

4.     Joseph Roofing LLC ("Joseph Roofing") is a limited liability company organized and authorized to do business in the State of Wyoming. Joseph Roofing is a citizen of the State of Wyoming. Mr. Perez is the organizer and an owner of Joseph Roofing---and is employed by Joseph Roofing. Ms. Garcia Garcia is the other owner of Joseph Roofing. Mr. Cervantes Garcia is employed by Joseph Roofing as the manager.

5.     Erich Steven Tucker ("Mr. Tucker") is a citizen and resident of the State of Idaho.

## II.     JURISDICTION

6.     This Court has subject matter jurisdiction over this action under 28 U.S.C. §1332(a)(1) in that there is complete diversity of citizenship between the plaintiffs and the defendant---and the amount in controversy exceeds the sum of Seventy-Five Thousand Dollars ($75,000.00) exclusive of interest and costs in conformity with the provisions of 28 U.S.C. §1332(a).

7.     This Court has personal jurisdiction over the defendant by virtue of the fact that his acts and omissions giving rise to this Complaint occurred within Teton County, Wyoming.

## III.     VENUE

8.     Venue of this action lies in this judicial district under 28 U.S.C. § 1391(b)(2) because the acts and omissions giving rise to the claims for relief in this matter occurred in Teton County, Wyoming.

## IV.    FACTS COMMON TO ALL CLAIMS FOR RELIEF

### a.  Defamatory Actions.

9.    Defendant Tucker owns and operates a roofing business that competes for customers and business with Plaintiff Joseph Roofing, which is owned by Mr. Perez and Ms. Garcia Garcia, operated by Mr. Perez and Mr. Cervantes Garcia, and which provides a livelihood for Mr. Perez, Ms. Garcia Garcia, and Mr. Cervantes Garcia.

10.    On May 19, 2023 and thereafter, Mr. Tucker caused to be published a defamatory communication in Misty's List which is a Facebook Group having a membership of 52,771 members.[1]  The post incorporated an advertisement run by Joseph Roofing in The Jackson Hole News & Guide.  The advertisement identified Joseph Roofing LLC as well as Mac Perez (Mr. Perez) and Jesus Garcia (Mr. Cervantes Garcia).  Mr. Tucker's post---among other matters---stated it was a "[w]arning, warning all homeowners and business owners," "[t]his company is run by a bunch of thieves," "[t]hey stole roofing material from me and tools," "[i]f you want to be liable for something happening hire these guys."  The post is attached as Exhibit 1.

11.    On May 19, 2023 and thereafter, Mr. Tucker caused to be published a defamatory communication in Teton Valley's Garage Sale which is a Facebook Group having a membership of 14,291 members.  The post incorporated an advertisement run by Joseph Roofing in The Jackson Hole News & Guide.  The advertisement identified Joseph Roofing LLC as well as Mac Perez (Mr. Perez) and Jesus Garcia (Mr. Cervantes Garcia).  Mr. Tucker's post---among other matters---stated it was a "[w]arning, warning all homeowners and business owners," "[t]his company is run

---

[1] The "Group Rules" of Misty's List specifically require that members "be kind and courteous" and that there be "no hate speech or bullying".

by a bunch of thieves," "[t]hey stole roofing material from me and tools," "[i]f you want to be liable for something happening hire these guys." The post is attached as Exhibit 2.

12. On May 19, 2023 and thereafter, Mr. Tucker caused to be published a defamatory communication in Jackson Hole Man Stuff which is a Facebook Group having a membership of 9,648 members. The post incorporated an advertisement run by Joseph Roofing in The Jackson Hole News & Guide. The advertisement identified Joseph Roofing LLC as well as Mac Perez (Mr. Perez) and Jesus Garcia (Mr. Cervantes Garcia). Mr. Tucker's post---among other matters---stated it was a "[w]arning, warning all homeowners and business owners," "[t]his company is run by a bunch of thieves," "[t]hey stole roofing material from me and tools," "[i]f you want to be liable for something happening hire these guys." The post is attached as Exhibit 3.

13. It is not known if Mr. Tucker made posts or other communications to other Facebook groups or other social media groups. Discovery will be undertaken to determine those facts.

14. Each of the posts constituted public communications that (a) held the plaintiffs up to hatred, contempt, ridicule, or scorn, (b) caused the plaintiffs to be shunned or avoided, (c) injured the plaintiffs' reputation and diminished the esteem, respect, goodwill, or confidence in which the plaintiffs are held, and (d) damaged and caused economic harm to Joseph Roofing and its owners and employees.

15. Each of the posts was defamatory *per se* in that they imputed a criminal offense as well as conduct, characteristics, or conditions that would adversely affect the plaintiffs' fitness for the proper conduct of their business, trade, or profession.

16. Each of the posts was false, was known to be false, and/or was published in reckless disregard of whether the communication was false inasmuch as Mr. Tucker had knowledge of facts indicating the falsity of the post yet he nevertheless caused the post to be published.

b.  **Animus, Harassing and Intimidating Actions, and Reckless and Careless Misconduct.**

17.    Mr. Tucker is a bully.  He has a history of personal animus against the plaintiffs, a history of harassing and intimidating people, and a history of voluntarily engaging in reckless and careless misconduct.

- **Animus**.

18.    Mr. Tucker owns MD Roofing, a direct competitor of Joseph Roofing.

19.    He hired Joseph Roofing as his subcontractor but terminated the company on November 16, 2022.  Thereafter he engaged in harassing and violent misconduct against Mr. Perez as well as Mr. Cervantes Garcia and Joseph Roofing.  He enlisted an agent who cut the lock and broke into the Joseph Roofing trailer and who left with tools, a compressor, and roofing nail guns owned by Joseph Roofing.

20.    On November 19, 2022, Mr. Tucker had a discussion with Mark Priest, Teton County Sheriff's Deputy, which Deputy Priest reported as follows: he "[a]lso wanted to vent about the illegal aliens and how it seems as they were placed on the 'right side of the law' by the other deputies."

21.    On January 13, 2023, Mr. Tucker sent a disparaging text to Mr. Perez which included the following statement: "You went to Dale Grey do you think he likes people from South of the border? Heck no dude hahaHah."  Mr. Tucker was aware that Mr. Perez---although having lived in Teton County for approximately ten years---did not have papers securing his ability to remain in the United States.  It is noted that Mr. Perez as well as Mr. Cervantes Garcia have been in the process of obtaining proper documentation.  Accordingly, Mr. Tucker was completely knowledgeable that Mr. Perez was vulnerable and that comments such as those he made in regard to Mr. Grey would be threatening and intimidating to Mr. Perez.  It is how a bully acts.

22.   On January 14, 2023, Mr. Perez was in his work truck with some of his employees. He stopped at a gas station/convenience store in Victor, Idaho to get coffee.  Mr. Tucker was in the back of the convenience store and walked forward and accosted Mr. Perez in a threatening manner.  Exhibit 4.  Mr. Perez turned away to avoid the confrontation, walked outside, and got into his truck. Mr. Tucker had purchased a breakfast burrito at the convenience store.  He followed Mr. Perez.  He spit on Mr. Perez's windshield (Exhibit 5), walked to the other side of the truck (Exhibit 6), and threw (and splattered) his breakfast burrito onto the driver's side of the windshield (Exhibits 7 and 8).

23.   Mr. Perez, again, tried to avoid any confrontation.  He drove his truck to another convenience store to clean his windshield.  However, Mr. Tucker followed close behind and parked at the same store.  Mr. Perez cleaned the windshield as best he could and was taking pictures of it. Mr. Tucker again aggressively accosted Mr. Perez (Exhibit 9), smiling with apparent satisfaction (Exhibit 10) as Mr. Perez walked away.  Mr. Tucker followed Mr. Perez to the side of his truck. As Mr. Perez was backing up to leave the convenience store, Tucker spat on the driver's window (Exhibit 11).

24.   On January 17, 2023---in consequence of the series of events that had transpired--- Mr. Perez filed a petition for protective order against Mr. Tucker in the Seventh Judicial District Court, Teton County, Idaho.  Judge Jason D. Walker convened a hearing on the petition on February 13, 2023.  Mr. Tucker was represented by an attorney and testified.  Mr. Perez was represented by counsel.  After hearing testimony and receiving exhibits, Judge Walker issued an explicit Protection Order:

> The Respondent shall not contact or attempt to contact the protected person(s) in any manner, including in person or through another person, or in writing or through any electronic means, including telephone, email, text, through social networking, or facsimile. The Respondent shall not harass;

stalk; threaten; use, attempt to use or threaten use of physical force; or engage in any other conduct that would place the protected person(s) in reasonable fear of bodily injury.

25.   The defamatory posts violated the protective order.

- **History of Harassing and Intimidating People**.

26.   Mr. Tucker's record reveals a personal history of harassment and intimidation, including a charge for harassment in El Paso County, Colorado on May 28, 2013; on March 3, 2005, restraining order violations were brought against Mr. Tucker in El Paso County, Colorado; in September of 2004, four protection orders were granted against Mr. Tucker in Douglas County and El Paso County, Colorado; on April 7, 2004, Mr. Tucker was charged with two stalking charges and one harassment charge in El Paso County, Colorado; on March 12, 2004, Mr. Tucker was found guilty of harassment in El Paso County, Colorado; on January 24, 2003, a charge of ethnic intimidation-threats was issued against Mr. Tucker in El Paso County, Colorado.

27.   This personal history is demonstrative of Mr. Tucker's character.

- **History of Reckless and Careless Misconduct**.

28.   Mr. Tucker's record reveals a personal history of reckless and careless misconduct, including the following:  on November 3, 2016, a charge of theft in Teton County, Wyoming; on October 1, 2014, a charge of theft in Larimer County, Colorado; on May 27, 2013, a charge of shoplifting in Denver, Colorado; on May 28, 2013, charges of assault, harassment, and criminal mischief in El Paso County, Colorado; on February 22, 2010, a charge of shoplifting in Denver, Colorado; on December 21, 2009, careless driving in Summit County, Colorado; on September 18, 2009, water skiing carelessly in Pueblo County, Colorado.

29.   This personal history of reckless and careless misconduct is demonstrative of Mr. Tucker's character.

## C. <u>Punitive Damages.</u>

30.   The misconduct of Mr. Tucker was the proximate cause of the injuries to Mr. Perez, Mr. Cervantes Garcia, Ms. Garcia Garcia, and Joseph Roofing and the damages and harms sustained by each of them.  The misconduct was attended by negligent acts and omissions.  But the misconduct also was characterized by (a) willful and wanton misconduct, (b) acts and omissions undertaken in reckless disregard of the consequences and under circumstances and conditions that a reasonable person would know, or have reason to know, that such conduct would, in a high degree of probability, result in harm to another, (c) acts and omissions undertaken in willful disregard of the need to act despite the awareness of the high probability that serious injury, damage, and harm may result, and (d) acts and omissions undertaken with knowledge of the serious nature of the risk involved, or undertaken under circumstances in which the defendant should reasonably have had knowledge of the serious nature of the risk involved.

31.   The defendant is liable for punitive and exemplary damages.  Punitive and exemplary damages should be assessed against Mr. Tucker to deter him and others similarly situated from future similar misconduct.

## V.     <u>FIRST CLAIM FOR RELIEF (MR. PEREZ):  DEFAMATION</u>

32.   Plaintiffs hereby incorporate all statements and allegations contained in paragraphs 1 through 31 above as if fully set forth herein.

33.   Mr. Tucker owed duties of reasonable care to Mr. Perez---which he intentionally and recklessly breached.

34.   Mr. Tucker made false and defamatory communications concerning Mr. Perez.

35.   The communications constituted unprivileged publications to third parties.

36.   At the time of the publications, Mr. Tucker knew that the communications were false.

37.   At the time of the publications, Mr. Tucker acted in reckless disregard of whether the communications were false.

38.   As a proximate and direct result of the defamatory acts and omissions of Mr. Tucker, Mr. Perez suffered losses having economic or pecuniary value as a result of the publications as more specifically detailed in that section of this Complaint denominated as "Damages."

## VI.   SECOND CLAIM FOR RELIEF (MR. PEREZ):  DEFAMATION PER SE

39.   Plaintiffs hereby incorporate all statements and allegations contained in paragraphs 1 through 31 above as if fully set forth herein.

40.   Mr. Tucker owed duties of reasonable care to Mr. Perez---which he intentionally and recklessly breached.

41.   Mr. Tucker made false and defamatory communications concerning Mr. Perez.

42.   The communications constituted unprivileged publications to third parties.

43.   At the time of the publications, Mr. Tucker knew that the communications were false.

44.    At the time of the publications, Mr. Tucker acted in reckless disregard of whether the communications were false.

45.   The communications imputed a criminal offense as well as conduct, characteristics, or conditions that would adversely affect Mr. Perez's fitness for the proper conduct of his lawful business, trade, or profession.

46.   As a proximate and direct result of the defamatory acts and omissions of Mr. Tucker, Mr. Perez suffered losses having economic or pecuniary value as a result of the publications as more specifically detailed in that section of this Complaint denominated as "Damages."

**VII.    THIRD CLAIM FOR RELIEF (MR. PEREZ):  INTENTIONAL INFLICTION OF EMOTIONAL HARM**

47.    Plaintiffs hereby incorporate all statements and allegations contained in paragraphs 1 through 31 above as if fully set forth herein.

48.    Mr. Tucker owed duties of reasonable care to Mr. Perez---which he intentionally and recklessly breached.

49.    Mr. Tucker---by extreme and outrageous conduct---intentionally or recklessly caused severe emotional distress to Mr. Perez.

50.    As a proximate and direct result of the extreme and outrageous conduct, Mr. Perez suffered severe emotional distress---and damages and harms as more specifically detailed in that section of this Complaint denominated as "Damages."

**VIII.    FOURTH CLAIM FOR RELIEF (MR. PEREZ):  TRADE DISPARAGEMENT**

51.    Plaintiffs hereby incorporate all statements and allegations contained in paragraphs 1 through 31 above as if fully set forth herein.

52.    MD Roofing is a competitor of Joseph Roofing and Mr. Perez.

53.    The conduct of Mr. Tucker constituted derogatory statements about Mr. Perez and Joseph Roofing with a purpose of discouraging the public from dealing with Mr. Perez and Joseph Roofing.

54.    The defamatory communications made by Mr. Tucker were false statements.

55.    The defamatory communications were made with the intent or reasonable belief that they would cause financial loss for Joseph Roofing and Mr. Perez.

56.    The communications caused financial loss to Mr. Perez and Joseph Roofing.

57.    The communications were made by Mr. Tucker knowing they were false or with reckless disregard of whether they were false.

58.     As a proximate and direct result of the disparaging statements, Mr. Perez suffered damages and harms as more specifically detailed in that section of this Complaint denominated as "Damages."

### IX.     FIFTH CLAIM FOR RELIEF (MR. PEREZ):  UNFAIR COMPETITION

59.     Plaintiffs hereby incorporate all statements and allegations contained in paragraphs 1 through 31 above as if fully set forth herein.

60.     Mr. Tucker is a participant in the roofing market in Wyoming and Idaho---as is Joseph Roofing and Mr. Perez.

61.     Through his anticompetitive misconduct as detailed in this Complaint Mr. Tucker sought to gain an advantage over Joseph Roofing and Mr. Perez through misleading, deceptive, dishonest, fraudulent, coercive, or unconscionable conduct in trade or commerce.

62.     The misconduct caused financial loss to Mr. Perez and Joseph Roofing.

63.     As a proximate and direct result of the anticompetitive behavior, Mr. Perez suffered damages and harms as more specifically detailed in that section of this Complaint denominated as "Damages."

### X.     SIXTH CLAIM FOR RELIEF (MR. CERVANTES GARCIA):  DEFAMATION

64.     Plaintiffs hereby incorporate all statements and allegations contained in paragraphs 1 through 31 above as if fully set forth herein.

65.     Mr. Tucker owed duties of reasonable care to Mr. Cervantes Garcia---which he intentionally and recklessly breached.

66.     Mr. Tucker made false and defamatory communications concerning Mr. Cervantes Garcia.

67.     The communications constituted unprivileged publications to third parties.

68.     At the time of the publications, Mr. Tucker knew that the communications were false.

69.    At the time of the publications, Mr. Tucker acted in reckless disregard of whether the communications were false.

70.    As a proximate and direct result of the defamatory acts and omissions of Mr. Tucker, Mr. Cervantes Garcia suffered losses having economic or pecuniary value as a result of the publications as more specifically detailed in that section of this Complaint denominated as "Damages."

## XI.    SEVENTH CLAIM FOR RELIEF (MR. CERVANTES GARCIA): DEFAMATION PER SE

71.    Plaintiffs hereby incorporate all statements and allegations contained in paragraphs 1 through 31 above as if fully set forth herein.

72.    Mr. Tucker owed duties of reasonable care to Mr. Cervantes Garcia---which he intentionally and recklessly breached.

73.    Mr. Tucker made false and defamatory communications concerning Mr. Cervantes Garcia.

74.    The communications constituted unprivileged publications to third parties.

75.    At the time of the publications, Mr. Tucker knew that the communications were false.

76.    At the time of the publications, Mr. Tucker acted in reckless disregard of whether the communications were false.

77.    The communications imputed a criminal offense as well as conduct, characteristics, or conditions that would adversely affect Mr. Cervantes Garcia's fitness for the proper conduct of his lawful business, trade, or profession.

78.    As a proximate and direct result of the defamatory acts and omissions of Mr. Tucker, Mr. Cervantes Garcia suffered losses having economic or pecuniary value as a result of the

publications as more specifically detailed in that section of this Complaint denominated as "Damages."

## XII.   EIGHTH CLAIM FOR RELIEF (MR. CERVANTES GARCIA):  INTENTIONAL INFLICTION OF EMOTIONAL HARM

79.   Plaintiffs hereby incorporate all statements and allegations contained in paragraphs 1 through 31 above as if fully set forth herein.

80.   Mr. Tucker owed duties of reasonable care to Mr. Cervantes Garcia---which he intentionally and recklessly breached.

81.   Mr. Tucker---by extreme and outrageous conduct---intentionally or recklessly caused severe emotional distress to Mr. Cervantes Garcia.

82.   As a proximate and direct result of the extreme and outrageous conduct, Mr. Cervantes Garcia suffered severe emotional distress---and damages and harms as more specifically detailed in that section of this Complaint denominated as "Damages."

## XIII.   NINTH CLAIM FOR RELIEF (MR. CERVANTES GARCIA):  TRADE DISPARAGEMENT

83.   Plaintiffs hereby incorporate all statements and allegations contained in paragraphs 1 through 31 above as if fully set forth herein.

84.   MD Roofing is a competitor of Joseph Roofing and Mr. Cervantes Garcia.

85.   The conduct of Mr. Tucker constituted derogatory statements about Mr. Cervantes Garcia and Joseph Roofing with a purpose of discouraging the public from dealing with Mr. Cervantes Garcia and Joseph Roofing.

86.   The defamatory communications made by Mr. Tucker were false statements.

87.   The defamatory communications were made with the intent or reasonable belief that they would cause financial loss for Joseph Roofing and Mr. Cervantes Garcia.

88.   The communications caused financial loss to Mr. Cervantes Garcia and Joseph Roofing.

89.   The communications were made by Mr. Tucker knowing they were false or with reckless disregard of whether they were false.

90.   As a proximate and direct result of the disparaging statements, Mr. Cervantes Garcia suffered damages and harms as more specifically detailed in that section of this Complaint denominated as "Damages."

XIV.   **TENTH CLAIM FOR RELIEF (MR. CERVANTES GARCIA):  UNFAIR COMPETITION**

91.   Plaintiffs hereby incorporate all statements and allegations contained in paragraphs 1 through 31 above as if fully set forth herein.

92.   Mr. Tucker is a participant in the roofing market in Wyoming and Idaho---as is Joseph Roofing and Mr. Cervantes Garcia.

93.   Through his anticompetitive misconduct as detailed in this Complaint Mr. Tucker sought to gain an advantage over Joseph Roofing and Mr. Cervantes Garcia through misleading, deceptive, dishonest, fraudulent, coercive, or unconscionable conduct in trade or commerce.

94.   The misconduct caused financial loss to Mr. Cervantes Garcia and Joseph Roofing.

95.   As a proximate and direct result of the anticompetitive behavior, Mr. Cervantes Garcia suffered damages and harms as more specifically detailed in that section of this Complaint denominated as "Damages."

XV.   **ELEVENTH CLAIM FOR RELIEF (MS. GARCIA GARCIA):  TRADE DISPARAGEMENT**

96.   Plaintiffs hereby incorporate all statements and allegations contained in paragraphs 1 through 31 above as if fully set forth herein.

97.   MD Roofing is a competitor of Joseph Roofing and Ms. Garcia Garcia.

98.   Mr. Tucker knew or reasonably should have known that Ms. Garcia Garcia was an owner of Joseph Roofing.

99.   The conduct of Mr. Tucker constituted derogatory statements about Joseph Roofing with a purpose of discouraging the public from dealing with Joseph Roofing.

100.   The defamatory communications made by Mr. Tucker were false statements.

101.   The defamatory communications were made with the intent or reasonable belief that they would cause financial loss for Joseph Roofing.

102.   The communications caused financial loss to Joseph Roofing and Ms. Garcia Garcia.

103.   The communications were made by Mr. Tucker knowing they were false or with reckless disregard of whether they were false.

104.   As a proximate and direct result of the disparaging statements, Ms. Garcia Garcia suffered damages and harms as more specifically detailed in that section of this Complaint denominated as "Damages."

XVI.   **TWELFTH CLAIM FOR RELIEF (MS. GARCIA GARCIA): UNFAIR COMPETITION**

105.   Plaintiffs hereby incorporate all statements and allegations contained in paragraphs 1 through 31 above as if fully set forth herein.

106.   Mr. Tucker is a participant in the roofing market in Wyoming and Idaho---as is Joseph Roofing and Ms. Garcia Garcia.

107.   Mr. Tucker knew or reasonably should have known that Ms. Garcia Garcia was an owner of Joseph Roofing.

108.   Through his anticompetitive misconduct as detailed in this Complaint, Mr. Tucker sought to gain an advantage over Joseph Roofing (and, thus, Ms. Garcia Garcia) through

misleading, deceptive, dishonest, fraudulent, coercive, or unconscionable conduct in trade or commerce.

109.   The misconduct caused financial loss to Joseph Roofing and Ms. Garcia Garcia.

110.   As a proximate and direct result of the anticompetitive behavior, Ms. Garcia Garcia suffered damages and harms as more specifically detailed in that section of this Complaint denominated as "Damages."

## XVII.   THIRTEENTH CLAIM FOR RELIEF (JOSEPH ROOFING):  DEFAMATION

111.   Plaintiffs hereby incorporate all statements and allegations contained in paragraphs 1 through 31 above as if fully set forth herein.

112.   Mr. Tucker owed duties of reasonable care to Joseph Roofing---which he intentionally and recklessly breached.

113.   Mr. Tucker made false and defamatory communications concerning Joseph Roofing.

114.   The communications constituted unprivileged publications to third parties.

115.   At the time of the publications, Mr. Tucker knew that the communications were false.

116.   At the time of the publications, Mr. Tucker acted in reckless disregard of whether the communications were false.

117.   As a proximate and direct result of the defamatory acts and omissions of Mr. Tucker, Joseph Roofing suffered losses having economic or pecuniary value as a result of the publications as more specifically detailed in that section of this Complaint denominated as "Damages."

## XVIII.   FOURTEENTH CLAIM FOR RELIEF (JOSEPH ROOFING):  DEFAMATION PER SE

118.   Plaintiffs hereby incorporate all statements and allegations contained in paragraphs 1 through 31 above as if fully set forth herein.

119.  Mr. Tucker owed duties of reasonable care to Joseph Roofing---which he intentionally and recklessly breached.

120.  Mr. Tucker made false and defamatory communications concerning Joseph Roofing.

121.  The communications constituted unprivileged publications to third parties.

122.  At the time of the publications, Mr. Tucker knew that the communications were false.

123.  At the time of the publications, Mr. Tucker acted in reckless disregard of whether the communications were false.

124.  The communications imputed a criminal offense as well as conduct, characteristics, or conditions that would adversely affect Joseph Roofing's fitness for the proper conduct of its lawful business, trade, or profession.

125.  As a proximate and direct result of the defamatory acts and omissions of Mr. Tucker, Joseph Roofing suffered losses having economic or pecuniary value as a result of the publications as more specifically detailed in that section of this Complaint denominated as "Damages."

## XIX.  FIFTEENTH CLAIM FOR RELIEF (JOSEPH ROOFING):  TRADE DISPARAGEMENT

126.  Plaintiffs hereby incorporate all statements and allegations contained in paragraphs 1 through 31 above as if fully set forth herein.

127.  MD Roofing is a competitor of Joseph Roofing.

128.  The conduct of Mr. Tucker constituted derogatory statements about Joseph Roofing with a purpose of discouraging the public from dealing with Joseph Roofing.

129.  The defamatory communications made by Mr. Tucker were false statements.

130.  The defamatory communications were made with the intent or reasonable belief that they would cause financial loss for Joseph Roofing.

131.  The communications caused financial loss to Joseph Roofing.

132. The communications were made by Mr. Tucker knowing they were false or with reckless disregard of whether they were false.

133. As a proximate and direct result of the disparaging statements, Joseph Roofing suffered damages and harms as more specifically detailed in that section of this Complaint denominated as "Damages."

## XX.   SIXTEENTH CLAIM FOR RELIEF (JOSEPH ROOFING):  UNFAIR COMPETITION

134. Plaintiffs hereby incorporate all statements and allegations contained in paragraphs 1 through 31 above as if fully set forth herein.

135. Mr. Tucker is a participant in the roofing market in Wyoming and Idaho---as is Joseph Roofing.

136. Through his anticompetitive misconduct as detailed in this Complaint Mr. Tucker sought to gain an advantage over Joseph Roofing through misleading, deceptive, dishonest, fraudulent, coercive, or unconscionable conduct in trade or commerce.

137. The misconduct caused financial loss to Joseph Roofing.

138. As a proximate and direct result of the anticompetitive behavior, Joseph Roofing suffered damages and harms as more specifically detailed in that section of this Complaint denominated as "Damages."

## XXI.   DAMAGES

139. Plaintiffs hereby incorporate all statements and allegations contained in paragraphs 1 through 138 above as if fully set forth herein.

140. As a direct and proximate result of Mr. Tucker's misconduct as alleged in the First, Second, Fourth, Fifth, Sixth, Seventh, Ninth, Tenth, Eleventh, Twelfth, Thirteenth, Fourteenth,

and Sixteenth Claims for Relief, Mr. Perez, Mr. Cervantes Garcia, Ms. Garcia Garcia, and Joseph Roofing have been damaged, including as follows:

    a. Past and future loss of income, reputation, and other loss having economic or pecuniary value in an amount to be proven at trial.

    b. Financial loss in an amount to be proven at trial.

    c. Past and future loss of reputation in an amount to be proven at trial.

    d. Punitive damages in an amount to be proven at trial.

    e. Exemplary damages in an amount to be proven at trial.

    f. All other damages as allowed in an amount to be proven at trial.

141. As a direct and proximate result of Mr. Tucker's extreme and outrageous misconduct as alleged in the Third and Eighth Claims for Relief, Mr. Perez and Mr. Cervantes Garcia have been damaged, including as follows:

    a. Past and future physical pain and suffering in an amount to be proven at trial.

    b. Past and future emotional pain and suffering in an amount to be proven at trial.

    c. Past and future loss of enjoyment of life in an amount to be proven at trial.

    d. Past and future loss of earnings in an amount to be proven at trial.

    e. Punitive damages in an amount to be proven at trial.

    f. Exemplary damages in an amount to be proven at trial.

    g. All other damages as allowed in an amount to be proven at trial.

WHEREFORE, Mr. Perez, Mr. Cervantes Garcia, Ms. Garcia Garcia, and Joseph Roofing respectfully pray that the Court enter judgment against Mr. Tucker in an amount as supported by the allegations of this Complaint, together with interest and costs, and for such other and further relief as the Court deems just and equitable.

Dated:  November 9, 2023.

By:_____

Robert P. Schuster
Bradley L. Booke
Robert P. Schuster, P.C.
250 Veronica Lane, Suite 204
P.O. Box 13160
Jackson, Wyoming 83002
1.307.732.7800 (Telephone)
1.307.732.7801 (Facsimile)
bob@bobschuster.com
brad@bobschuster.com

*Attorneys for Mr. Perez, Mr. Cervantes Garcia,
Ms. Garcia Garcia, and Joseph Roofing LLC*

## **DEMAND FOR TRIAL BY JURY**

Plaintiffs hereby demand that all issues regarding all claims for relief above be tried by a

jury.

Dated: November 9, 2023.

By: _____

Robert P. Schuster